IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KARA LYNN McKAY,**

    **Plaintiff,**

v.                                                                                                 **No. 21-cv-0436 SMV**

**KILOLO KIJAKAZI,[1]**
**Acting Commissioner of the Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand, with Supporting Memorandum [Doc. 20], filed on January 10, 2022. The Commissioner responded on April 6, 2022. [Doc. 24]. Plaintiff replied on April 20, 2022. [Doc. 25]. The parties have consented to my entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the ALJ failed to apply the correct legal standard in evaluating Plaintiff's self-reported symptoms. Accordingly, remand is warranted. The Motion will be granted, and the case will be remanded. *See* 42 U.S.C. § 405(g) (sentence four) (2018).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

applied.[2]  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for a period of disability and disability insurance benefits on March 4, 2019. *See* Tr. 15. She alleged a disability-onset date of March 3, 2009. *See id.* Her claim was

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

denied initially and on reconsideration. *See id.* Administrative Law Judge ("ALJ") Cole Gerstner held two hearings: the first on July 10, 2020, and the second on October 14, 2020. Tr. 15, 63–104 (first hearing), 32–62 (second hearing). Due to the extraordinary circumstances presented by the coronavirus disease, both hearings were held by telephone. Tr. 66 (first hearing), 34 (second hearing); *see* Tr. 15 (second hearing). Plaintiff appeared by telephone with her attorney at both hearings. Tr. 15, 31–62. In the course of the two hearings, the ALJ heard testimony from Plaintiff Tr. 38–39, 53–61, 68–91; two vocational experts ("VEs"), Charles R. Poor, Tr. 73, 91–104, and Karen N. Provine, Tr. 39, 56–62; and medical expert Robert Smiley, M.D., Tr. 39–52.

The ALJ issued his unfavorable decision on November 12, 2020. Tr. 25. He found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015. Tr. 17. At step one, he found that Plaintiff had not engaged in substantial gainful activity during the period between her alleged onset date of March 3, 2009, and her date last insured ("DLI") of March 31, 2015. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, osteoarthritis of the knees and elbows, migraine, obesity, and degenerative joint disease of the right shoulder. Tr. 18. The ALJ found the following impairments were not severe: urinary incontinence and hidradenitis suppurativa. *Id.* Further, he found Plaintiff's fibromyalgia and rheumatoid arthritis did not qualify as medically determinable impairments. Tr. 18–19.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 19. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 19–23. The

ALJ found that Plaintiff could perform a limited range of sedentary work. Tr. 19. Specifically, he found that between her alleged onset date and her DLI, Plaintiff:

> had the [RFC] to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except she could lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently; she could sit for six hours in an eight-hour workday; she could stand for two hours in an eight-hour workday, and walk for two hours in an eight-hour workday. She could operate hand controls with the right hand frequently; she could operate hand controls with left hand frequently. She could occasionally reach overhead to the right. [Plaintiff] can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. She could balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, but never crawl. [Plaintiff] could never work at unprotected heights and never work around moving mechanical parts. She could work in extreme cold occasionally, in extreme heat occasionally, but never work in vibration. She could only work in moderate noise.

*Id.*

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a sales clerk or sales agent. Tr. 24. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VEs at step five. Tr. 24–25. He found that Plaintiff could perform the representative jobs of document preparer, escort vehicle driver, callout operator, and addresser, which together, exist in significant numbers in the national economy. *Id.* Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claim. *Id.* The Appeals Council denied review on March 8, 2021. Tr. 1–5. Plaintiff timely filed the instant action on May 10, 2021. [Doc. 1].

## **Analysis**

The ALJ's reasons for rejecting (even in part) Plaintiff's self-reported symptoms are mere boilerplate. There are no specific reasons for the weight given to Plaintiff's symptoms, and the

ALJ's rationale is not clearly articulated. Remand is warranted for reevaluation of Plaintiff's symptoms. However, Plaintiff fails to show any conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony.

I. The ALJ failed to apply the correct legal standard in
evaluating Plaintiff's self-reported symptoms.

In evaluating the symptoms reported by a claimant, the ALJ must utilize a two-step process. Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *5–10. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the reported symptoms. *Id.* at *5. Second, the ALJ evaluates the "intensity and persistence" of the symptoms, such as pain, and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *9. In considering the "intensity, persistence, and limiting effects" of a claimant's symptoms, the ALJ examines "the entire case record." *Id.* at *9–10. For example, the ALJ should consider:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at 18–19; *see* 20 C.F.R. § 404.1529(c)(3)(i)–(vii) (2017).

If the claimant's "statements about the intensity, persistence, and limiting effects" of her symptoms are consistent with the evidence of record, the ALJ will determine that the symptoms are "more likely to reduce [her] capacities to perform work-related activities." SSR 16-3p, 2016 SSR LEXIS 4, at *20. If they are not consistent, the ALJ will find that symptoms are "less likely to reduce [her] capacities to perform work-related activities." *Id.*

The ALJ's decision must contain more than conclusory findings. *Id.* at *26. A recitation of the factors is not adequate. *Id.* "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

Here, the ALJ applied the two-step process outlined in SSR 16-3p and made the following findings:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
> As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence does not support them.

Tr. 20. These findings are mere boilerplate. The most specific finding is that Plaintiff's statements about her symptoms are not persuasive "because the evidence does not support them." *Id.*

Defendant correctly points out that the ALJ described the medical evidence in some detail. [Doc. 24] at 7–9 (citing Tr. 20–21). Defendant points to the following section, for example, to show which evidence the ALJ found inconsistent with Plaintiff's self-reported symptoms:

7

> [Plaintiff] had lumbar degenerative disc disease.  In January 2011, an MRI showed *multilevel degenerative disc disease*, with no evidence or root compression or stenosis.  There was degenerative disc disease at L2-3, L4-5, and L5-S1.  There was disc herniation at L2-3 and L5-S1.  The doctor did not believe that there was any radiculopathy.  He was pessimistic about the effectiveness of injections.  Her physical exam showed *good back range of motion; normal muscle strength, bulk and tone in the legs*, and negative straight leg raise.  In April 2011, she had diagnoses of *disc bulging at C3-4 and C6-7, cervical arthritic changes, disc protrusion at L5-S1 contacting the exiting nerve root*, and left radicular pain syndrome at L5 with bilateral feet numbness and tingling.  She has taken Oxycodone, Acetaminophen, and Cymbalta for her pain.  In April 2012, she had full strength in the arms, with no sensory or tactile deficit. She had some cervical tenderness.

Tr. 20 (emphases added) (internal citations omitted).  Defendant extracts the reference "good range of motion and normal strength and tone" and argues that the ALJ was "outlin[ing] all of the evidence [he] found inconsistent with Plaintiff's testimony." [Doc. 24] at 8 (citing to Tr. 20).  But the same paragraph also noted multilevel degenerative disc disease, arthritic change, and bulging discs.  Tr. 20.  This and the other descriptions of the medical evidence, Tr. 20–22, do not contain "specific reasons" for rejecting (even in part) Plaintiff's symptoms.  SSR 16-3p, 2016 SSR LEXIS 4, at *26.  The ALJ's descriptions of the medical evidence, Tr. 20–22, do not constitute a clear articulation of his reasons and do not allow this Court to assess how the ALJ evaluated Plaintiff's symptoms.  *See* SSR 16-3p, 2016 SSR LEXIS 4, at *26 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").  Remand is warranted for reevaluation of Plaintiff's self-reported symptoms.

### Plaintiff fails to show any apparent conflict between the DOT and VE's testimony.

"When there is an apparent unresolved conflict between VE [testimony] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [testimony] to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 SSR LEXIS 8, at *4–5.

Here, the ALJ found that Plaintiff could only occasionally "reach overhead to the right." Tr. 19. Plaintiff argues that this limitation conflicts with the DOT's descriptions for document preparer, escort vehicle driver, and addresser, which all require frequent reaching, without specifying the direction. [Doc. 20] at 9. Defendant argues that there is no conflict. [Doc. 24] at 11–12. The dispute, therefore, is whether there is an apparent conflict between the VE's testimony and the DOT.

On the one hand, in *Carson v. Barnhart*, the Tenth Circuit Court of Appeals found apparent conflicts between the RFC limiting the plaintiff to *sedentary* work and the VE's testimony that the plaintiff could perform jobs that were classified as *light*. The court also noted that the jobs identified by the VE required frequent reaching but the plaintiff could only reach occasionally with his dominant arm. 140 F. App'x 29, 37–38 (10th Cir. 2005).

On the other hand, in *Poppa v. Astrue*, the Tenth Circuit found no conflict between the DOT requirements for mail clerk (frequent reaching, handling, and fingering) and the plaintiff's "slightly below normal" fine and manual dexterity on one hand. 569 F.3d 1167, 1174 (10th Cir. 2009). Similarly, in *Segovia v. Astrue*, the Tenth Circuit found no reversible error where the plaintiff was limited to occasional overhead reaching but the step-five jobs required frequent reaching generally, i.e., "in any direction." 226 F. App'x 801, 804 (10th Cir. 2007). The court

9

explained that "even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching." *Id.* Moreover, the VE in that case was aware of the plaintiff's limitation in overhead reaching and testified that she could perform the jobs consistent with the DOT. Finally, "[t]o the extent that there [wa]s any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. All kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Id.* (quoting *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (ellipses and bracket omitted)).

The conflict alleged here is not blatant like the one in *Carson* (sedentary versus light work), Instead, the conflict Plaintiff alleges is nearly identical to the one in *Segovia* (reaching generally versus reaching overhead to the right). Although Defendant cited to *Segovia*, [Doc. 24] at 11, Plaintiff did not attempt to distinguish it, [Doc. 25]. As in *Segovia*, the VE in this case was aware of Plaintiff's reaching limitation and still testified that she could perform the duties of document preparer, escort vehicle driver, and addresser, consistent with the DOT. Tr. 57–58. Under the circumstances, Plaintiff fails to show that the VE's testimony conflicted with the DOT.

## Conclusion

Although Plaintiff fails to show error in the VE's testimony, remand is necessary for reevaluation of Plaintiff's self-reported symptoms.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand, with Supporting Memorandum [Doc. 20] be **GRANTED**. The

Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.  *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**